### EDWARD H. MILES *v.* THEUS N. MILES ET AL.

1. EQUITABLE MORTGAGE. *Deed to son's interest in father's estate.*

    A conveyance by one brother to another of his interest in their father's estate, it being verbally agreed between them and the father that said interest should be particular lands, is valid, and the lien reserved in the deed for the purchase money may be enforced after the father's death, the father having, in recognition and confirmation of the deed, invested the grantee with title to said lands.

2. SAME. *Ambiguity.*

    A deed conveying the grantor's interest in the estate of his father, not disclosing the father to be alive, is not void; while the interest is uncertain, the ambiguity is latent and not patent.

3. SAME. *Parol evidence.*

    Parol evidence is admissible to show the meaning the parties themselves attached to words of description used in a deed.

FROM the chancery court of Holmes county.

HON. ADAM M. BYRD, Chancellor.

Edward H. Miles, appellant, was the complainant, and Theus N. Miles and others, appellees, were defendants in the

court below. From a decree sustaining defendants' demurrer to the bill of complaint and dismissing the suit, the complainant appealed to the supreme court. The opinion states the facts.

*H. S. Hooker, Jr., Noel & Pepper*, and *Hooker, Wilson & Wiener*, for appellant.

. To summarize the salient points of complainant's case: General Miles, the father, had agreed to give Omega plantation to his son, the complainant. Defendant, Theus, another son, desired to purchase this property from his brother, the complainant, and the complainant agreed to sell it to him for $10,000; thereupon the complainant executed the deed in controversy, and induced his father, General Miles, to make a deed directly to said defendant, investing him with the title. Complainant was the real vendor. The two deeds must be read together, and the deed executed by complainant expressly reserves a lien on the property to secure the purchase money.

1. It is said the statute of frauds is fatal to complainant's case. To this we answer by citing authorities showing that the statute has no application to the case made by the bill. 2 Jones on Liens, 39; *Holloway* v. *Ellis*, 25 Miss., 103; *Marsh* v. *Lilse*, 34 Miss., 179; *Russell* v. *Watt*, 41 Miss., 602; *Gordon* v. *Manning*, 44 Miss., 756; *Campbell* v. *Henry*, 45 Miss., 326; *Perkins* v. *Gibson*, 51 Miss., 699; *McLain* v. *Thompson*, 52 Miss., 418; *Rutland* v. *Brister*, 53 Miss., 684; *Murphree* v. *Countiss*, 58 Miss., 713; *Louisiana, etc., Bank* v. *Knapp*, 61 Miss., 486.

2. Coming now to the second contention of our adversaries in support of their demurrer, can we not show by parol evidence what the parties, the two sons and the father, meant by the descriptive terms used in the deed executed by the complainant? The authorities relied upon by adversary counsel announce a general rule which we do not deny, but we do contend that this case is not within that general rule. It must be

borne in mind that the deed executed by the complainant is to be considered along with the deed executed by General Miles, the father, and with his will. All three papers must be treated as constituting one. George's Miss. Dig., 145, and authorities cited. So considered, most certainly the complainant is entitled to relief. He is, perhaps, entitled to enforce a lien not only on Omega, but also on the other plantation conveyed to defendant by the father's deed. But, if we look to the deed executed by complainant alone, there can be no trouble about the reception of parol evidence to show what property was conveyed. If there be any ambiguity in the description it is a latent one. The deed does not show on its face that the father was alive at the date of its execution. It is only when we learn aliunde that General Miles was then alive that any question arises. Parol evidence is admissible to show what land was conveyed. No effort is made to alter, amend, or modify the contractual part of the deed. *Baum* v. *Lynn*, 72 Miss., 932; *Powell* v. *Thompson*, 80 Ala., 51; *Singer, etc., Co.* v. *Forsyth*, 108 Pa. St., 334; *Claflin* v. *Duncan*, 74 Ga., 348; *Lindley* v. *Lacey*, 17 C. B. (N. S.), 578; *Ayer* v. *Bell*, 147 Mass., 46; *Dunkin* v. *Cobleigh*, 17 L. R. A., 273, s.c. 12 Am. & Eng. Enc. L. (2d ed.), 875; *Stewart* v. *Cage*, 59 Miss., 558; *Patterson* v. *Snell*, 67 Miss., 559; *Buttrick* v. *Tilton*, 141 Mass., 93; *McGavie* v. *Deery*, 41 Tenn., 265; *Austin* v. *Dolbee*, 101 Mich., 292.

*Tackett & Smith* and *C. H. Williams*, for appellees.

The relation of vendor and vendee does not exist between appellant and appellees. If it did exist the lien was waived because (*a*) all of the grantees are purchasers direct from Gen. Miles, and only one of them is responsible for the payment of the notes sued on; and (*b*) because the notes sued upon were given for both real and personal property. That the relation of vendor and vendee does not exist is shown by the authorities. 5 Am. & Eng. Enc. L. (1st ed.), 431, note 1; *Ib.* (2d

ed.), 1029; 2. *Ib.* (2d ed.), 238, note 4; *Miller* v. *Tunica County,* 67 Miss., 651; *Metcalf* v. *Brandon,* 58 Miss., 841; *Miazza* v. *Yerger,* 53 Miss., 135; 10 L. R. A., 401; code 1892, § 4230. The lien was waived. *Campbell* v. *Henry,* 45 Miss., 329; *Griffin* v. *Byrd,* 74 Miss., 32. The deed is void for uncertainty in description. *Cocke* v. *Blackbourn,* 58 Miss., 537; *Ehrman* v. *Hoskins,* 67 Miss., 192; *Baum* v. *Lynn,* 72 Miss., 932 ; *Lumber Co.* v. *Lumber Co.,* 71 Miss., 944; *Johnson* v. *Johnson,* 74 Miss., 549; *Coats* v. *Bacon,* 77 Miss., 320; *Thompson* v. *Bryant,* 75 Miss., 12, s.c. 6 L. R. A., 33, s.c. 17 L. R. A., 270, and notes; *Gumbel* v. *Koon,* 59 Miss., 266; *McGuire* v. *Stevens,* 42 Miss., 731; *Peters* v. *Tunell,* 19 Am. St. Rept., 252; *Jelks* v. *Barrett,* 52 Miss., 315; *Bowers* v. *Anderson,* 52 Miss., 596; *Kerr* v. *Calvit,* Walker (Miss.), 115; *Payson* v. *West, Ib.,* 515; *Cocke* v. *Blackbourn,* 58 Miss., 537; *Callett* v. *Bacon,* 33 Miss., 269; *Cocke* v. *Bailey,* 42 Miss., 81; *Brown* v. *Guice,* 46 Miss., 299.

Argued orally by *E. F. Noel,* for appellant, and by *S. M. Smith,* for appellees.

Calhoon, J., delivered the opinion of the court.

The bill and exhibits show that in 1897 Gen. William R. Miles, a man of large wealth, a very prominent citizen, and then quite old, having reached the age of about seventy-five years, was, and had been for a long time, married to a second wife, and had only two descendants, Edward H. Miles, the appellant, and Theus N. Miles, one of the appellees.

During the lifetime of the father, Theus was anxious to buy the interest of Edward in the father's estate, and it appears that the General was willing that negotiations to that end might be taken up. The first mention of this matter is in a letter from Theus to Edward, of date March 23, 1897, containing these words: ''Did father have the talk with you about the property question ? If so, at what conclusion did you and he

arrive? Write and let me know.'' On May 29, 1897, he again writes: '' You seem to think I only offered you $5,000 for your interest in the Mississippi patrimony. You are mistaken. I offered you $10,000. This latter amount is, of course, less than your interest in the estate would be. But, if you will remember, I suggested that, as you personally would have no use for money, and as money would be more serviceable to your order than land, I proposed that I would give you the $10,000, on obtaining possession of the property, the title to be passed as follows: A life interest to Alice and myself with remainder to our children. I could not for a moment, think of giving you only $5,000. That would be rank swindling. Now in a few days we go from here to Goodhope. I will take the matter up with father and will write you from there. I wish I had the $5,000 in cash on hand. I would most certainly advance it to you. Possibly I may have it before the twentieth of (next) month, and if I do get it you shall certainly gratify your wish about the chapel.''

On June 19, 1897, he writes from Goodhope, his father's house: '' It is absolutely impossible to get just now so large an amount of money as $5,000. . . . Now, I will make you the following proposition: I will, on the 1st of January next, pay you $2,000, and thereafter on the 1st of January, 1899, 1900, 1901, and 1902, $2,000 each, the deferred payments to bear interest at six per centum per annum. You, in consideration of these payments, to sell to Alice and myself a life interest in your portion of father's estate, remainder over to our children, reserving a lien on the estate until all the payments shall have been made.'' On the basis marked out in these letters, Edward and Theus and their father met at Goodhope on July 1, 1897, and the following acts were done: Edward executed a conveyance of '' my entire interest in the estate of W. R. Miles, my father, to Theus N. Miles and Alice Herrick Miles for and during their lives, with remainder over to the issue of their bodies. This contract embraces anything and everything

that I would inherit at my father's death, be the same real estate, personal property, or ornaments, the payment to be made by Theus N. Miles,'' and the conveyance then recites the five promissory notes and provides, '' I reserve a vendor's lien upon the property sold for the payment,'' etc. On the same day the father executed a conveyance to Theus N. Miles and wife for life, remainder to their issue, of two plantations, known respectively as Quofaloma and Omega, beginning the conveyance with these words: '' Whereas, my son, Edward H. Miles, has sold his interest in my estate to his brother, Theus N. Miles.'' Here the question at once arises, what was the interest of Edward in his father's estate, the sale of which is thus recognized by the father? We are left in no doubt about this, because thereupon the father wrote his will.

This will provides that, '' Whereas, my son, Edward H. Miles, sold his entire interest in my estate to his brother, Theus N. Miles, and, whereas, on the first day of July, 1897, I made a deed to said Theus N. Miles of the Omega and Quofaloma plantations, which, in connection with advances theretofore made, constituted his and his brother Edward's full share of my estate,'' therefore he proceeds to devise his remaining two plantations, Goodhope and Black Bayou, to his wife.

If there had been no understanding at the time as to what the particular part of the property was, but for the conveyances, to go to Edward, it is plain from the will that his interest was an undivided one-half interest in Omega and Quofaloma, and Edward would have had an enforceable vendor's lien by contract on this interest in the land and the personalty on them. But the bill charges that in fact Omega was Edward's part.

It is incontrovertibly plain that there was no intent on the father's part to disinherit Edward, and it is equally plain that Edward was the real vendor to Theus, and that the father's conveyance was to ratify that contract by his own conveyance of the legal title. There can be no question that the two sons and the father all knew what Edward's interest in fact was.

Now, we resume the correspondence. On November 28, 1897, Theus writes Edward: "Business affairs have turned out so badly with me that I will not be able to meet my first note on January 1, 1898. I wish you would write to me on receipt of this, letting me know what time you will give me on the note. Be sure and do this." On December 17, 1897, he writes: "Your letter of the first instant was received some time since. I have deferred answering, hoping that I might have been able to make a sale in Alexandria and have your money for you by January 1. I have heard from there to-day, and can do nothing for you in January. I will strain every nerve to have the money for you in April. If I can get it sooner I will do so." On April 3, 1898, he writes, asking Edward to wait "yet a little while," and saying: "In the meantime, rest easy; your debt is amply secured." On March 12, ·1899, he acknowledges receipt of Edward's letter of February 22, 1899, speaking of having cotton in Yazoo city unsold, and saying: "As soon as I sell you shall hear from me, . . . and though your money may be a little slow coming, you will eventually get every cent." On October 12, 1899, answering Edward, he says: "If I had any money, I would send it to you. Please be patient yet a little while. As soon as I can get my cotton to market and sell it I will pay you at least the interest, if not more," and he speaks of improvements made, saying: "You know all the houses on the two plantations had gone to rack and ruin. I have had them to repair and new ones to build. This has taken a great deal of money, and this money spent has increased your security. Now, remember, please, I will send you some money as soon as I can get it. If I can possibly get it, I will send you, next week, the $20 you ask for."

The bill avers that Omega was the interest sold; that $10,000 was a very small price for it; that no payment has been made except the first year's interest on the notes, and prays enforcement of the vendor's lien and general relief. The bill was met

by a demurrer, on the grounds of no equity shown and complete remedy at law, which was sustained below.

This being a lien specifically made by contract, is enforceable, if it be competent to show by parol what the interest was which was conveyed. *Griffin* v. *Byrd*, 74 Miss., on page 33. What that interest was is a latent and not a patent ambiguity. We refer to the briefs of counsel and the authorities they cite, and say this, further: Parol evidence is admissible to show the meaning which the parties themselves attached to words they themselves employed in their own written contract. *Shackelford* v. *Hooker*, 54 Miss., 716, and cases there cited; 2 Am. & Eng. Enc. L. (2d ed.), 287, title, "Ambiguity," and particularly page 289, "Ambiguity of intermediate class," and notes,.and page 293, "Acts under the instrument."

Edward Miles conveyed to Theus his "entire interest in the estate of W. R. Miles," his father. If his father had been then dead, there would have been no ambiguity whatever of any sort. But we learn, aliunde the deed, that his father was then living, and Edward, therefore, had no interest in his estate. This creates a latent ambiguity, an immediate one, and raises the question, What is meant by the terms, "entire interest in the estate of W. R. Miles?" The bill shows what they meant and understood to be conveyed by these terms, which are not in themselves ambiguous, but are made so by the development of the fact that General Miles was then alive. The deed related to property as conveyed, and expressly reserved a lien on it for $10,000. It appears from the bill that Omega was the subject of the conveyance and the property understood by the parties as the interest of Edward in the estate of his father, and Edward also renounced claim to anything else of the estate. The express lien is clearly enforceable against Omega.

*Reversed, demurrer overruled, and thirty days from date of filing mandate below allowed for answer.*